1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL HUFTILE,

11            Plaintiff,              No. CIV S-03-1522 FCD DAD P

12       vs.

13   L.C. MICCIO-FONSECA,

14            Defendant.              ORDER

15   _____/

16            Plaintiff is proceeding pro se and has filed a civil rights action pursuant to 42

17   U.S.C. § 1983.  He is currently detained at Coalinga State Hospital under the jurisdiction of

18   California's Department of Mental Health following his 2002 civil commitment as a sexually

19   violent predator.  Before the court is defendant Dr. Miccio-Fonseca's motion to dismiss this

20   action brought pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

21   I.  Background and Procedural History

22            This action is one of four cases that plaintiff has filed in this court relating to his

23   2002 civil commitment.[1]  The first of those four was a civil rights action brought against Dr. Val

24

25        [1]  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman,
     803 F.2d 500, 504 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980)
26   ("a court may take judicial notice of its own records in other cases, as well as the records of an
     inferior court in other cases.").

1

1    Farmer alleging that the doctor had violated plaintiff's constitutional rights by testifying at the

2    2002 civil commitment proceeding.  See Huftile v. Farmer, CIV S-03-0585 DFL PAN P.[2]   The

3    district court dismissed plaintiff's claims for damages and declaratory relief pursuant to the

4    holding in Heck v. Humphrey, 512 U.S. 477 (1994), granted defendant Farmer's motion for

5    summary judgment on plaintiff's claims for injunctive relief and denied plaintiff's motion for

6    preliminary injunction.  Huftile v. Farmer, CIV S-03-0585 DFL PAN P, Order filed Mar. 17,

7    2006 at 2.

8            Next, plaintiff filed a civil rights action against Dr. Jack Vognsen[3] alleging that

9    Dr. Vognsen's improper actions resulted in plaintiff being found a sexually violent predator and

10   seeking prospective injunctive relief prohibiting Dr. Vognsen from taking such actions in the

11   future.  Huftile v. Vognsen, CIV S-03-0604 RRB JFM P.  On June 22, 2007, the assigned

12   magistrate judge in that action filed findings and recommendations recommending that defendant

13   Vognsen's motion to dismiss that action be granted.  Plaintiff requested and received an

14   extension of time to September 24, 2007 to file objections to those findings and

15   recommendations and, in the meantime, has filed an interlocutory appeal to the Ninth Circuit in

16   connection with that action.

17           In addition to his civil rights cases, on January 27, 2005, plaintiff filed a petition

18   for a writ of habeas corpus challenging his 2002 civil commitment on the grounds of

19   insufficiency of the evidence and that he was denied due process by the exclusion of certain

20   /////

21   ─────────────────

22   [2] Defendant Farmer had provided counseling services to plaintiff in 1983, conducted a
     psychological evaluation and testified as a defense witness at plaintiff's 1984 child molestation

23   trial in South Dakota.  See Huftile v. Farmer, CIV S-03-0585 DFL PAN P, Findings and
     Recommendations (F&R) filed Feb 10, 2006 at 2.  At plaintiff's 2002 civil commitment

24   proceeding, Dr. Farmer's 1984 report was submitted into evidence by the district attorney
     without objection and Dr. Farmer was called to testify by the state.  Id. at 3.

25   [3] Both Dr. Vognsen and the doctor named in this action, Dr. Miccio-Fonseca, served as
     evaluators of plaintiff in connection with the 2002 civil commitment proceeding and both were

26   called to testify at that proceeding by the state.

1   evidence he sought to present to the jury.  See Huftile vs. Hunter, CIV S-05-0174 GEB DAD P.

2   That habeas action remains pending before the court.

3           The history of this case, plaintiff's third civil rights action and fourth case filed

4   with respect to his 2002 civil commitment proceeding, will now be summarized.  On July 17,

5   2003, plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 challenging the manner in which

6   defendant Dr. Miccio-Fonseca conducted her 2002 evaluation of plaintiff.  Specifically, plaintiff

7   alleged that Dr. Miccio-Fonseca violated confidentiality rules and codes of professional ethics by

8   reviewing plaintiff's prison file, medical records, psychological evaluations, and police and court

9   records without his consent.  See Huftile v. Miccio-Fonseca, CIV S-03-1522 FCD DAD P, Order

10  and F&Rs, filed Aug. 15, 2003 at 3.  Plaintiff also alleged that Dr.  Miccio-Fonseca's report

11  contained false and unsupported statements, inaccurate test results, incomplete information and

12  unsound conclusions.  Id.  Plaintiff sought damages as well as declaratory and injunctive relief.

13          On August 15, 2003, the undersigned recommended that the action be dismissed

14  as barred by the holding in Heck v. Humphrey.  The findings and recommendations were adopted

15  by the assigned District Judge on September 4, 2003.  Plaintiff appealed and on June 10, 2005,

16  the U.S. Court of Appeals for the Ninth Circuit affirmed the dismissal of plaintiff's claim for

17  damages and declaratory relief, finding that the rule announce in Heck did apply to those

18  detained under California's Sexually Violent Predators Act ("SVPA").  Huftile v. Miccio-

19  Fonseca, 410 F.3d 1136, 1139-41 (9th Cir. 2005).  The Ninth Circuit remanded the matter so that

20  dismissal of those claim could be specified as without prejudice to plaintiff filing a § 1983 action

21  seeking such relief in the event his civil commitment was subsequently invalidated through some

22  other means such as the granting of habeas relief.  Id. at 1142.  The Ninth Circuit, however,

23  reversed the dismissal of plaintiff's claim for injunctive relief which sought an order preventing

24  Dr. Miccio-Fonseca from inflicting further injury upon him.  Id. at 1141.  Specifically, the court

25  stated:

26  /////

1   While Huftile's claims for damages and declaratoroy relief are
    barred by <u>Heck</u>, Huftile's claim for injunctive relief is not barred.
2   We therefore reverse the portion of the district court's order
    finding a <u>Heck</u> bar to injunctive relief.  We do not decide whether
3   Huftile is, in fact, entitled to injunctive relief.  On remand, the
    district court will be free, through appropriate procedures, to
4   decide on the propriety of such relief.

5   <u>Id.</u>

6       Following remand, on March 8, 2006, the undersigned filed findings and

7   recommendations recommending that plaintiff's claims for damages and declaratory relief be

8   dismissed without prejudice and that this action proceed solely on his claim for prospective

9   injunctive relief.  Those findings and recommendations were adopted by the assigned District

10  Judge on April 19, 2006.  On July 24, 2006, defendant filed a motion to dismiss the remaining

11  claim.  Rather than opposing that motion, plaintiff filed an amended complaint, erroneously titled

12  "Second Amended Complaint."[4]  By order filed December 8, 2006, the undersigned denied

13  defendant's motion to dismiss without prejudice in light of plaintiff's right to amend his

14  complaint prior to the filing of a responsive pleading.  Defendant was directed to file a response

15  to the second amended complaint.   On February 9, 2007, defendant responded by filing the

16  pending motion to dismiss.  On March 16, 2007, plaintiff filed his opposition to the motion.[5]

17  /////

18

19      [4] Although titled "Second Amended Complaint," this document is actually plaintiff's
    amended complaint.  The only previously filed complaint was the original complaint filed on
20  July 17, 2003.  Nevertheless, in order to avoid any further confusion the court will use plaintiff's
    description and refer to the complaint now before the court as plaintiff's second amended
21  complaint.

22      [5] Resolution of this motion has been delayed by other actions taken by plaintiff.  In this
    regard, on August 14, 2006, plaintiff filed a motion for preliminary injunction and on September
23  14, 2006, a motion to reinstate his claims for damages and declaratory relief.  Plaintiff's motion
    for preliminary injunction was denied as defective and premature and the undersigned
24  recommended that the motion to reinstate his claims for declaratory relief and damages be
    denied.  The findings and recommendations were adopted by the assigned District Judge on
25  February 20, 2007.  However, on March 5, 2007, plaintiff filed a notice of appeal from the
    court's order denying his motion to reinstate his requests for declaratory relief and damages.
26  Recently, on July 27, 2007, that appeal was dismissed for lack of jurisdiction.

4

II.  Plaintiff's Second Amended Complaint

Dr. Miccio-Fonseca is the sole defendant named in this action.  As indicated above, she was one of two psychologists who evaluated plaintiff for the California Department of Mental Health in connection with his 2002 civil commitment proceeding.  Dr. Miccio-Fonseca attempted to interview plaintiff on February 2, 2001, while he was incarcerated at the California Men's Colony and before his scheduled release on April 20, 2001.  (Second Am. Compl. (Compl.) at 11.)  Plaintiff signed the form titled, "Notice Of Evaluation As a Sexually Violent Predator" and checked the form indicating that he declined to be interviewed.  (Id., Ex. J.)  On July 3, 2002, Dr. Miccio-Fonseca again attempted to interview plaintiff, this time at the Sacramento County Jail following his release on parole.  (Compl. at 14.)  Plaintiff alleges that Dr. Miccio-Fonseca informed him that she had a court order requiring plaintiff to speak to her but he does not indicate whether he participated in an interview or whether information obtained from him at that time was used in connection with the evaluation .  (Id.)  In any event, Drs. Miccio-Fonseca and Vognsen both concluded that plaintiff had a diagnosed mental disorder and was dangerous, resulting in civil commitment proceedings being initiated and eventually a jury determination that plaintiff is a sexually violent predator.  Plaintiff has been subject to civil commitment since November 19, 2002.  (Id. at 2.)

In his second amended complaint plaintiff lists thirteen claims and eight requests for injunctive relief.  Instead of linking specific factual allegations to each claim, plaintiff has merely set out his allegations in a lengthy narrative.  In attempting to discern the nature of plaintiff's claims, the court finds that they can be fairly grouped into the following four categories.

First, plaintiff challenges the methodology, accuracy and sufficiency of Dr. Miccio-Fonseca's evaluation of him.  In this regard, plaintiff contends that Dr. Miccio-Fonseca failed to conduct an independent evaluation and instead simply duplicated the comments of others, relied on stale information, ignored favorable information in plaintiff's prison file, failed

to properly score the Static-99 test administered to plaintiff, violated codes of ethics concerning professionalism and psychological testing, and misconstrued facts relating to his South Dakota conviction involving his stepdaughter, his work history, education, military service, financial dependence on others, desire to be alone, diagnoses by other clinicians and criminal history. Plaintiff contends that Dr. Miccio-Fonseca's action caused him to be "irreversibly stigmatized for the rest of his life" and violated his Fourteenth Amendment rights to due process, a fair trial, and equal protection.  (Id. at 13.)

Second, plaintiff claims that both the Clinical Evaluator Handbook and Standardized Assessment Protocol (SAP) manual used by Dr. Miccio-Fonseca in conducting plaintiff's evaluation are "illegal" because they were not approved by the Office of Administrative Law pursuant to California Government Code §§ 11340, et seq. as mandated by Executive Order S-2-03 signed by Governor Schwarzenegger on November 17, 2003.  (Id., Ex. A.)  Plaintiff also alleges that the SAP manual reflects an improper bias by encouraging psychiatrists and psychologists to find that the offenders being evaluated suffer from a mental disorder.  Plaintiff contends, therefore, that use of the SAP manual and handbook violated his constitutional rights to due process, privacy, and equal protection.

Third, plaintiff claims that Dr. Miccio-Fonseca violated his constitutional right to privacy, his contract rights and the doctor/patient and husband/wife privileges by accessing his prison files, medical files and the records of Dr. Farmer without plaintiff's consent.

Fourth, plaintiff claims that Dr. Miccio-Fonseca violated his rights to procedural due process, a fair trial and against self-incrimination.  In this regard, plaintiff alleges that Dr. Miccio-Fonseca failed to tape record their February 2, 2001 interview, failed to produce a copy of the court order requiring plaintiff to be interviewed on July 3, 2002 and to tape record that interview, failed to provide proper notice before interviewing plaintiff and failed to inform plaintiff of his right to have counsel present at the interviews.

/////

1        Based upon these alleged unconstitutional acts by Dr. Miccio-Fonseca, plaintiff

2  seeks the following prospective injunctive relief:  (1) an order barring Dr. Miccio-Fonseca from

3  "approaching Plaintiff in any official or unofficial manner" without the presence of counsel; (2)

4  an order prohibiting Dr. Miccio-Fonseca, state evaluators or other agents of the State of

5  California from using or referring to Dr. Miccio-Fonseca's evaluation of plaintiff; (3) an order

6  requiring that all records of Dr. Miccio-Fonseca's evaluation of plaintiff be destroyed; (4) an

7  order prohibiting Dr. Miccio-Fonseca, other evaluators and agents of California from using Dr.

8  Val Farmer's reports, evaluations or testimony; (5) an order prohibiting any contact with

9  plaintiff's ex-wife and requiring that all records of past conversations with plaintiff's ex-wife be

10  destroyed; (6) an order prohibiting Dr. Miccio-Fonseca, other evaluators and agents of California

11  from using the Clinical Evaluator Handbook and Standardized Assessment Protocol (SAP);

12  (7) an order prohibiting the use of his South Dakota conviction, involving plaintiff's

13  stepdaughter, as a predicate offense under the SVPA; and (8) an order barring Dr. Miccio-

14  Fonseca and other evaluators and agents of California from falsely characterizing the nature of

15  his South Dakota conviction.

16  III.  Parties' Arguments

17      A.  Defendant's Motion to Dismiss

18        Dr. Miccio-Fonseca argues that because each of plaintiff's substantive claims lack

19  merit, he is not entitled to the requested injunctive relief and this action should therefore be

20  dismissed.  Specifically, Dr. Miccio-Fonseca argues that she simply complied with the mandates

21  of the SVPA in conducting plaintiff's evaluation and that although plaintiff may be dissatisfied

22  with her conclusions, he does not have a right to a particular mental health diagnosis.  Because

23  she was merely complying with state law, Dr. Miccio-Fonseca argues, plaintiff cannot succeed on

24  the merits of his claims and his claims for prospective injunctive relief should be dismissed.

25        With respect to plaintiff's due process claims Dr. Miccio-Fonseca contends that

26  plaintiff was provided all the procedural protections to which he is entitled under the SVPA.  As

1  to plaintiff's argument that the 1984 sexual offense conviction in South Dakota involving his

2  stepdaughter cannot be relied upon as a predicate offense under the SVPA, defendant argues that

3  the Act was amended in 2000 to require only one victim and that the South Dakota offense could

4  properly be considered in connection with plaintiff's evaluation.

5       Dr. Miccio-Fonseca next argues that under the SVPA she properly reviewed

6  plaintiff's records and consulted with his treating clinicians in evaluating plaintiff and that he has

7  no reasonable expectation of privacy in those records for this purpose.   She also contends that

8  plaintiff cannot succeed on any claim that his right against self-incrimination was violated

9  because such Fifth Amendment rights do not attach in proceedings seeking the civil commitment

10 of sex offenders.

11      Dr. Miccio-Fonseca also argues that plaintiff cannot prevail on his injunctive

12 relief claim because he cannot show that he suffered any irreparable harm as a result of the

13 alleged errors in her evaluation.  In this regard Dr. Miccio-Fonseca points out that her evaluation

14 merely supported the petition for commitment and that thereafter plaintiff received a probable

15 cause hearing and a jury trial and enjoyed the assistance of counsel, access to all information and

16 the opportunity to cross-examine defendant as to her biases and her conclusions.  Dr. Miccio-

17 Fonseca argues that because plaintiff has no right to confidentiality in his prison, medical or

18 parole records and because the notice he signed explained that if he declined to be interviewed,

19 the evaluation would be completed using his records and other sources of information, he cannot

20 state a cognizable Fourth Amendment claim.  Finally, Dr. Miccio-Fonseca contends that any

21 other claims presented by plaintiff are too vague and conclusory to state a cognizable claim.

22      B.  Plaintiff's Opposition

23      In his rambling twenty-one page opposition to the motion to dismiss plaintiff

24 provides little relevant argument.  He argues, for instance, that Dr. Miccio-Fonseca should clarify

25 whether she seeks application of the Younger abstention doctrine.  (Opp'n at 1-2.)

26 Misunderstanding defendant's argument, he claims that he has demonstrated irreparable injury

1    because he has been denied his liberty and suffers the permanent stigma of being labeled a

2    sexually violent predator.  (Id.)  Plaintiff also reasserts his claim that he enjoys the protections of

3    the psychotherapist-patient and spousal privileges under state law and that the defendant violated

4    those privileges.  He continues to argue in conclusory fashion against use of the Clinical

5    Evaluator's Handbook and SAP while attacking the validity of Dr. Miccio-Fonseca evaluation of

6    him and the conclusions set forth therein.  Likewise, he argues that his South Dakota conviction

7    involving his stepdaughter should not have been used as a qualifying predicate offense for his

8    civil commitment.  (Id. at 7-9.)  Plaintiff contends that his trial "had all the fairness of a

9    kangaroo court[.]"  (Id.)  He also argues that Fifth Amendment protections applied when Dr.

10   Miccio-Fonseca visited him at the County Jail in 2001 because he believed her visit was a

11   criminal investigation.  (Id. at 14-15.)

12           For these reasons and because he believes subsequent re-commitments will be

13   based on Dr. Miccio-Fonseca's invalid evaluation of him, plaintiff repeats his demand for a

14   permanent injunction by which the court can stop the defendant's "nefarious practices."  (Id. at

15   16-17.)

16           Below, the court will address the legal standards applicable to the pending motion,

17   the process enacted by the SVPA and the merits of the pending motion.

18   IV.  Legal Standards

19           A.  Motion to Dismiss

20           In considering a motion to dismiss, the court must accept as true the allegations of

21   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

22   (1976), construe the pleading in the light most favorable to the party opposing the motion and

23   resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

24   Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

25   Haines v. Kerner, 404 U.S. 519, 520 (1972).  Rule 8(a)(2) of the Federal Rules of Civil

26   Procedure "requires only 'a short and plain statement of the claim showing that the pleader is

1  entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the

2  grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955,

3  1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive

4  dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation

5  of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right

6  to relief above the speculative level." Id. at 1965.

7      B.  Civil Rights Actions

8          The Civil Rights Act under which this action was filed provides as follows:

9          Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
10  deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
11  law, suit in equity, or other proper proceeding for redress.

12  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

13  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

14  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

15  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

16  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

17  omits to perform an act which he is legally required to do that causes the deprivation of which

18  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

19      C.  California's Sexually Violent Predators Act (SVPA)

20          The Sexually Violent Predators Act became effective on January 1, 1996 and

21  reflected "'the Legislature's determination of the importance of identifying and controlling

22  persons whose criminal history and mental state render them sexually violent predators.'"  Hubbs

23  v. Alamo, 360 F. Supp. 2d 1073 (C.D. Cal. 2005) (quoting Albertson v. Superior Court, 25 Cal.

24  4th 796, 810 (Cal. 2001)).

25          The procedures set out under the SVPA have been summarized by the Ninth

26  Circuit as follows:

California's SVP Act requires that a prisoner who was previously convicted of certain enumerated violent sex crimes be evaluated by the Department of Corrections, the Board of Prison Terms, and the California Department of Mental Health six months before being released from prison to determine whether the prisoner may be a potential SVP.  See Cal. Welf. & Inst.Code § 6601(a)(1).  This screening involves review of the prisoner's background and criminal record. See id. § 6601(b).  If the Department of Corrections concludes that the prisoner is likely to be an SVP, the prisoner is referred to the Department of Mental Health for a "full evaluation" to determine whether the prisoner meets the other criteria in the SVP Act.  See id.

This full evaluation must be conducted in accordance with a standardized assessment protocol by at least two practicing psychiatrists or psychologists designated by the Department of Mental Health.  See id. § 6601(c) & (d).  The two evaluators must agree that the prisoner has a mental disorder and is dangerous within the meaning of section 6600 for proceedings to go forward under the SVP Act. [fn. omitted.] See id. § 6601(d).  If the two evaluators agree that the prisoner should be civilly committed under the SVP Act, the Department of Mental Health will then transmit a request for a petition for commitment to the county in which the alleged SVP was convicted.  At that time the Department of Mental Health will also send the county copies of the psychiatric evaluations prepared by the evaluators and any other supporting documentation.  See id. § 6601(d), (h), & (i).

"If the county's designated counsel [either the district attorney or county counsel] concurs with the recommendation, a petition for commitment shall be filed in the [county's] superior court...." Id. § 6601(i).  Once the petition for civil commitment is filed in the superior court by the county's designated counsel, a superior court judge will then hold a "probable cause hearing." Id. § 6602(a).  At this hearing, the prisoner is entitled to assistance of counsel.

The superior court judge will determine at the hearing whether there is probable cause to believe that the prisoner is likely to engage in sexually violent, predatory criminal behavior after being released from prison.  See id.  If the judge determines there is no probable cause, the judge shall dismiss the petition for commitment.  If, however, the judge determines that probable cause exists, the judge must order the prisoner to remain in custody pending a civil commitment trial to determine whether the prisoner is, by reason of a diagnosed mental disorder, a danger to the health and safety of others and likely to engage in acts of sexual violence upon release from prison.

Despite the fact that the commitment trial is civil in nature, the prisoner is nonetheless "entitled to a trial by jury, to the assistance

1    of counsel, to the right to retain experts or professional persons to
     perform an examination on his or her behalf, and to have access to
2    all relevant medical and psychological records and reports." Id.
     [Cal. Welf. & Inst. Code] § 6603.  If the prisoner is indigent, then
3    she or he is entitled to court-appointed counsel and court-appointed
     experts.  If the prisoner or county's designated counsel do not
4    demand a jury trial, a bench trial will be conducted.  Id. § 6603(e).
     The court or jury shall determine whether, beyond a reasonable
5    doubt, the prisoner is a sexually violent predator.  Id. § 6604.  A
     unanimous verdict is required in any jury trial.  Id. § 6603(f).  "If
6    the court or jury is not satisfied beyond a reasonable doubt that the
     person is a sexually violent predator, the court shall direct that the
7    person be released at the conclusion of the term for which he or she
     was initially sentenced."  Id.  But if the court or jury determines
8    following a trial that the person is a sexually violent predator, then
     the prisoner is deemed an SVP and civilly committed for two years
9    in a facility designated by the California Department of Mental
     health.  See id. § 6604.  The SVP is then committed to the custody
10   of the Department of Mental Health "for appropriate treatment and
     confinement in a secure facility . . . ."  Id.

11
         An SVP may not be civilly committed for more than two years
12   unless a new petition for commitment is filed and a subsequent re-
     commitment is obtained pursuant to the same safeguards detailed
13   above.  See id.  Once every year, the civilly committed SVP has a
     right to a "show cause" hearing to determine whether her or his
14   condition has changed such that she or he no longer poses a danger
     to others.  See id. § 6605.  If the superior court at the show cause
15   hearing determines that the SVP's condition has changed, then
     another hearing is held by the court to permit the State to show that
16   the SVP remains a danger to others.  Again, if the . . . [SVP] or
     county's designated counsel do not demand a jury trial, a bench
17   trial will be conducted to determine whether the SVP remains a
     danger to others.  If the court or jury finds in favor of the civilly
18   committed SVP, then the person must be released.  If, however, the
     court or jury finds in favor of the State, the person is recommitted
19   for two more years.  See id. §§ 6605, 6608.

20   Carty v. Nelson, 426 F.3d 1064, 1066-68 (9th Cir. 2005), cert. denied ___U.S.___, 126 S. Ct.

21   2037 (2006).

22        At the time of plaintiff's 2002 SVPA proceedings, a sexually violent predator

23    (SVP) was defined as follows:

24   /////

25   /////

26   /////

12

1
2
3

> a person who has been convicted of a sexually violent offense
> against two or more victims and who has a diagnosed mental
> disorder that makes the person a danger to the health and safety of
> others in that it is likely that he or she will engage in sexually
> violent criminal behavior.

4   Cal. Wel. & Inst. Code § 6600(a)(1).[6]

5
6
7
8

> "Sexually violent offense" means the following acts when
> committed by force, violence, duress, menace, or fear of immediate
> and unlawful bodily injury on the victim or another person, and
> that are committed on, before, or after the effective date of this
> article and result in a conviction or a finding of not guilty by reason
> of insanity [for enumerated California Penal Code sections] . . .

9   Id. at § 6600(b).  The sexually violent offense could be a prior or current conviction that resulted

10  in a determinate prison sentence, a prior conviction that resulted in the grant of probation, or a

11  prior conviction in another jurisdiction.  Id. at § 6600(a)(2).  "No restriction is placed on the time

12  at which a prior qualifying crime must have occurred."  Hubbs, 360 F. Supp. 2d at 1077.

13  V.  Analysis

14        When the Ninth Circuit considered the applicability of the decision in Heck v.

15  Humphrey to this action, the court concluded that plaintiff's claims challenging the procedures

16  used to evaluate him under the SVPA were barred since a favorable decision on those claims

17  would necessarily imply the invalidity of his civil commitment.  The court reasoned:

18
19
20
21
22
23

> [T]he structure of the SVPA statutory scheme indicates that the
> success of Huftile's § 1983 claim would necessarily imply the
> invalidity of his civil commitment.  Before the California Director
> of Mental Health can forward a request for an SVPA commitment
> petition to the appropriate county, two evaluators must agree that
> "the person has a diagnosed mental disorder so that he or she is
> likely to engage in acts of sexual violence without appropriate
> treatment and custody."  Cal. Welf. & Inst. Code § 6601(d). . . .
> Because Dr. Miccio-Fonseca was one of Huftile's evaluators, a
> judgment in favor of Huftile in his § 1983 action would necessarily

24
25
26

[6] Contrary to Dr. Miccio-Fonseca's assertion, it would appear that at the time of
plaintiff's 2002 civil commitment proceeding, the SVPA required conviction involving "two or
more victims. . .."  The statute was not modified until November 7, 2006 to instead require "One
or more victims . . .."  Cal. Wel. & Inst. Code § 6600(a)(1) (Initiative Measure Prop. 83, § 24,
approved Nov. 7, 2006, eff. Nov. 8, 2006).

1   imply the invalidity of his civil commitment.  That is, if only one
2   evaluator, rather than two, had concluded that Huftile had a
    "mental disorder" within the meaning of § 6601(d), there would
3   have been no basis for the state Director of Mental Health to send
    the request to the county, no basis for the county attorney to file a

4   petition for commitment, and no basis for the judge to go forward
    with a probable cause determination.

5

6   Huftile v. Micci-Fonseca, 410 F.3d at 1141.  Thus, although this case is now proceeding solely as

7   an action for permanent injunctive relief, the holding in Heck still operates as a bar to claims

8   necessarily implicating the validity of plaintiff's civil commitment.  See Wilkinson v. Dotson,

9   544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior

10  invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of

11  the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success

12  in that action would necessarily demonstrate the invalidity of confinement or its duration.").

13          Despite this reality, in his second amended complaint plaintiff has essentially

14  restated the factual allegations and claims that were presented in his original complaint.  Given

15  plaintiff's pro per status and the subtleties of the nature of the remand, it is perhaps

16  understandable that plaintiff's second amended complaint lacks clarity and direction.  Therefore,

17  and out of an abundance of caution, the court will grant defendant's motion to dismiss while also

18  granting plaintiff leave to file a third amended complaint should he wish to pursue this civil

19  rights action in addition to the petition for writ of habeas corpus he has pending before the court.

20  Below, in an effort to be instructive, the court will also provide the legal standards applicable to

21  the claims and requests for prospective injunctive relief that plaintiff is apparently attempting to

22  present .

23          A.  Plaintiff's Requests for Permanent Injunction

24          As noted above, plaintiff's second amended complaint lists eight separate requests

25  for permanent injunctive relief.  However, in support of each request plaintiff must provide

26  /////

14

factual allegations that, if proved, would satisfy the requirements for the granting of permanent

injunctive relief.  The Supreme Court has identified those requirements as follows:

> According to well-established principles of equity, a plaintiff
> seeking a permanent injunction must satisfy a four-factor test
> before a court may grant such relief.  A plaintiff must demonstrate:
> (1) that it has suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the balance of
> hardships between the plaintiff and defendant, a remedy in equity
> is warranted; and (4) that the public interest would not be disserved
> by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., ____ U.S. ____, 126 S. Ct. 1837, 1839 (2006).  See also

American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045, 1066-67 (9th Cir. 1995)

("The requirements for the issuance of a permanent injunction are the likelihood of substantial

and immediate irreparable injury and the inadequacy of remedies at law.")  In addition, in

seeking prospective injunctive relief, plaintiff must allege facts that if proven would establish

that he is likely to suffer future injury if defendant is not so enjoined.  See Hodgers-Durgin v. De

La Vina, 199 F.3d 1037, 1042 (9th Cir. 1999).  Thus, as the Ninth Circuit has observed:

> In a suit for prospective injunctive relief, a plaintiff is required
> to demonstrate a real and immediate threat of future injury.
> City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S. Ct.
> 1660, 75 L. Ed.2d 675 (1983) (holding that the threat must be
> "'real and immediate'" as opposed to "'conjectural' or
> 'hypothetical'"). The key issue is whether the plaintiff is "likely to
> suffer future injury." Id. at 105, 103 S. Ct. 1660; see also O'Shea
> v. Littleton, 414 U.S. 488, 496, 498, 94 S. Ct. 669, 38 L. Ed.2d 674
> (1974).

Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006).

Plaintiff is also cautioned that in this regard "the court is not obliged to accept

allegations of future injury which are overly generalized, conclusory, or speculative." Stevens v.

Harper, 213 F.R.D. 358, 370 (E.D. Cal. 2002).  See also City of Los Angeles v. Lyons, 461 U.S.

95, 105-08 & n.7 (1983) (plaintiff required to credibly allege that he faces a realistic threat of

future harm from the practice he seeks to enjoin).  The standards for permanent injunction and

preliminary injunction are essentially the same with the exception that in order for a permanent

1   injunction to issue, plaintiff must ultimately show actual success on the merits, instead of

2   probable success on the merits.  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12

3   (1987); see also Walsh v. City and County of Honolulu, 460 F. Supp. 2d 1207, 1211 (D. Hawaii

4   2006).

5            Finally, among his requests for injunctive relief plaintiff seeks an order directed

6   not only at Dr. Miccio-Fonsea, but also at "any other State evaluator, or any other agent of the

7   State of California" prohibiting their consideration or use of information with respect to plaintiff.

8   (Compl. at 36-37.)  As a general rule this court is unable to issue an order against individuals

9   who are not parties to a suit pending before it.  See Zenith Radio Corp. v. Hazeltine Research,

10  Inc., 395 U.S. 100, 112 (1969).  Therefore, if he elects to pursue this action by filing a third

11  amended complaint, plaintiff is advised that requests for a permanent injunction directed at

12  officials other than the sole defendant named in this action, Dr. Miccio-Fonseca, will likely be

13  subject to dismissal.

14           B.  Due Process Claims

15           As noted above, in his second amended complaint plaintiff alleges that Dr.

16  Miccio-Fonseca's evaluation of him was defective and resulted in a violation of his right to due

17  process.  He seeks a permanent injunction prohibiting any future use of that evaluation.  In order

18  for plaintiff to obtain the requested injunctive relief, it would appear the court would be required

19  to find that Dr. Miccio-Fonseca's evaluation was defective.  As the Ninth Circuit has already

20  determined, if Dr. Miccio-Fonseca's evaluation and conclusion that plaintiff has a diagnosed

21  mental disorder and is likely to engage in acts of sexual violence absent appropriate treatment

22  and custody were to be set aside, plaintiff's 2002 civil commitment would necessarily be

23  invalidated.  See Huftile v. Micci-Fonsea, 410 F.3d at 1141.  This is precisely what Heck bars.

24  Id.; see also Hubbs, 360 F. Supp. 2d at 1080 ("[A] civil committee, such as plaintiff, cannot seek

25  to overturn his civil commitment proceedings in a civil rights action for damages and injunctive

26  relief."); Rogers v. Ill. Dept. of Corr. Special Eval. Unit, 160 F. Supp. 2d 972, 977-78 (N.D. Ill.

2001).  Therefore, any such claims presented in a third amended complaint would likely be the subject of dismissal.

Plaintiff also claims that his due process rights were violated by Dr. Miccio-Fonseca's failure to tape record her interviews of plaintiff, to provide sufficient notice before conducting the second interview and to advise plaintiff of his right to counsel at the interviews. The court finds the allegations of plaintiff's second amended complaint to be so vague and ambiguous as to make it impossible to determine whether he can state a cognizable claim in this regard.

The United States Supreme Court "has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979).  Therefore, the Due Process Clause requires that the standard of proof at trial for authorizing civil commitment must be "more substantial than a mere preponderance of the evidence." Id. at 427.  The Due Process Clause also requires that the sexually violent predator statute provide for "a finding of dangerousness either to one's self or to others[,] . . . . evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." Kansas v. Hendricks, 521 U.S. 346, 357 (1997).  The Supreme Court upheld Kansas' SVPA which "establishes procedures for the civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of sexual violence.'" Id. at 350. California's SVPA has been found to be nearly identical to the Kansas statute upheld by the Supreme Court.  See Carmony v. Hunter, No. CIV S-03-0927 DFL JFM P, 2006 WL 3762110, at *6 n.5 (E.D. Cal. Dec. 20, 2006) (citing Hubbart v. Superior Court, 19 Cal. 4th 1138, 1157-58 (Cal. 1999)).   In Hendricks the Supreme Court suggested that the SVPA provides adequate procedural due process protections.  521 U.S. at 356-57.  The Ninth Circuit has so held.  Carty, 426 F.3d at 1074-75 (rejecting petitioner's habeas claim that the procedures employed in his

/////

1   SVPA proceeding violated due process); see also Johnson v. Nelson, 142 F. Supp. 2d 1215, 1230

2   (S.D. Cal. 2001).

3          It is against this legal backdrop that plaintiff's procedural due process claims must

4   be assessed.  While the court has found no case specifically addressing the subject, the

5   undersigned is quite skeptical of plaintiff's ability to allege a cognizable due process claim based

6   on the allegation that his evaluator did not tape record his interviews.  Should plaintiff elect to

7   file a third amended complaint and include such a claim he should set forth additional factual

8   allegations demonstrating how Dr. Miccio-Fonseca's failure to tape record the interviews

9   violated his due process rights, clarifying the liberty interest his claim is based upon, and

10  explaining how he was harmed by the lack of tape recording in light of the fact that at his civil

11  commitment trial he was represented by counsel who had the opportunity to cross-examine Dr.

12  Miccio-Fonseca about these matters.  The same is true should plaintiff wish to pursue due

13  process claims and injunctive relief with respect to the alleged lack of sufficient notice of

14  interview and failure to advise of the right to counsel at the interview.  Of course, given the fact

15  that this action is proceeding solely on plaintiff's claims for prospective injunctive relief, with

16  respect to all of these claims plaintiff must allege facts that if proven would establish that he is

17  likely to suffer future injury if Dr. Miccio-Fonseca is not so enjoined.

18          C.  Equal Protection Claim

19          Plaintiff alleges that Dr. Miccio-Fonseca's evaluation violated his right to equal

20  protection but he provides no allegations in support of this claim.  The undersigned is also

21  skeptical as to plaintiff's ability to state a cognizable equal protection claim.  See Carty, 426 F.3d

22  at 1075, n.5 (rejecting at least one form of equal protection claim brought by a petitioner

23  challenging his SVPA commitment).  Nonetheless, if plaintiff intends to proceed with an equal

24  protection claim, he must include factual allegations in his third amended complaint clarifying

25  how he has been treated differently from others who are similarly situated.  See City of Cleburne

26  v. Cleburne Living Center, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the

1   Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction

2   the equal protection of the laws,' which is essentially a direction that all persons similarly

3   situated should be treated alike.") (quoting <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)).

4        D.  <u>Fourth Amendment and Privacy Claims</u>

5        Plaintiff alleges that Dr. Miccio-Fonseca's use of Dr. Farmer's 1983-84 reports

6   and her speaking to both Dr. Farmer and plaintiff's ex-wife in conducting the evaluation violated

7   plaintiff's rights under the Fourth Amendment.  (Compl. at 34-35.)  However, plaintiff has no

8   cognizable right to privacy that would prevent Dr. Miccio-Fonseca, or any other evaluator, from

9   reviewing and relying upon Dr. Farmer's psychiatric records in carrying out their duties under the

10   SVPA.  <u>See</u> <u>Hubbs</u>, 360 F. Supp. 2d at 1081-82 (rejecting a nearly identical claim). Therefore,

11   any such claim presented in a third amended complaint would likely be the subject of dismissal.[7]

12        E.  <u>Sixth Amendment Claim</u>

13        Plaintiff vaguely claims that Dr. Miccio-Fonseca's evaluation violated his Sixth

14   Amendment rights.  If plaintiff wishes to pursue a claim under the Sixth Amendment he must

15   allege specific facts establishing the manner in which Dr. Miccio-Fonseca's actions violated his

16   constitutional rights in this regard.  Plaintiff is forewarned, however, that the "fact that a

17   proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a

18   'criminal prosecution' for purposes of the Sixth Amendment." <u>Carty</u>, 426 at 1073 (quoting

19   <u>Middendorf v. Henry</u>, 425 U.S. 25, 37); <u>Carmony</u>, 2006 WL 3762110 at *9.  Although

20

21       [7]  The same can be said for plaintiff's claims that Dr. Miccio-Fonseca violated his
     privileges with respect to doctor/patient and husband/wife communications and his contractual
22   right created when plaintiff signed the notice of evaluation and declined to be interviewed.  First,
     both California and South Dakota have statues allowing disclosure of confidential or privileged
23   information when a statutory exception has been enacted or when the physical or mental health
     of the person is at issue.  <u>See</u> <u>Huftile v. Vognsen</u>, CIV S-03-0604 RRB JFM P, F&Rs filed June
24   22, 2007 at 7-8 (citing Cal. Wel. & Inst. Code § 5328 and South Dakota Codified Law § 19-2-3).
     Second, Dr. Miccio-Fonseca was required by statute to consider plaintiff's criminal and
25   psychosexual history.  "[T]he [Act] contemplates that the psychological evaluators will have
     access to and consider these [psychological] records in rendering their opinions and writing their
26   reports."  <u>Hubbs</u>, 360 F. Supp. 2d at 1082.

1    involuntary civil commitment "constitutes a significant deprivation of liberty that requires due

2    process protection," <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979), the Sixth Amendment right

3    to confrontation does not attach in civil commitment proceedings.  <u>Carty</u>, 426 at 1073 ; <u>United</u>

4    <u>States v. Sahhar</u>, 917 F.2d 1197, 1205-06 (9th Cir. 1990).  Likewise, the privilege against self-

5    incrimination does not apply in sex offender civil commitment proceedings.  <u>Allen v. Illinois</u>,

6    478 U.S. 364, 374 (1986).  In short, "the procedures required for a civil commitment are not

7    nearly as rigorous as those for criminal trials, or even juvenile proceedings."  <u>Carty</u>, 426 at 1073

8    (quoting <u>Sahhar</u>, 917 F.2d at 1206).

9           F.  <u>Plaintiff's Claims Concerning the Clinical Evaluator Handbook and SAP Manual</u>

10                 The SVPA authorizes the use of a standardized assessment protocol as follows:

11                 The State Department of Mental Health shall evaluate the person in
                   accordance with a standardized assessment protocol, developed
12                 and updated by the State Department of Mental Health, to
                   determine whether the person is a sexually violent predator as
13                 defined in this article.  The standardized assessment protocol shall
                   require assessment of diagnosable mental disorders, as well as
14                 various factors known to be associated with the risk of reoffense
                   among sex offenders.  Risk factors to be considered shall include
15                 criminal and psychosexual history, type, degree, and duration of
                   sexual deviance, and severity of mental disorder.

16

17   Cal. Wel. & Inst. Code § 6601(c).

18                 Plaintiff claims that the handbook and manual are regulations and were not

19   properly promulgated according to state law.  Again, this court is skeptical of plaintiff's ability to

20   state a cognizable claim in this regard.  <u>See</u> <u>Carmony</u>, 2006 WL 3762110 at *11 (in the habeas

21   context rejecting petitioner's claim that the Department of Corrections was without authority to

22   implement the SVPA because the involved administrative agencies had failed to comply with the

23   Administrative Procedures Act of the California Government Code).  Should plaintiff

24   nonetheless elect to pursue such a claim, he is encouraged to identify the sections of the

25   California Administrative Procedure Act which support this contention.  In addition, plaintiff

26   /////

1  must provide factual allegations that support his request for an injunction prohibiting Dr. Miccio-

2  Fonseca from relying on the handbook and SAP manual in evaluating him in the future.

3          As to plaintiff's claim that the SAP manual is biased and therefore violates his

4  constitutional rights in some way, he must also provide more specific factual allegations in

5  support thereof.  Plaintiff should identify specific portions of the SAP manual that he contends

6  creates a bias and plaintiff must clearly state the legal basis for his claim.  To the extent that

7  plaintiff is attempting to allege a violation of his due process rights, he is advised that he enjoys

8  no due process right to a particular diagnosis or evaluation.  See Addington v. Texas, 441 U.S.

9  418, 429-30 (1979); Johnson v. Mayberg, No. C 02-3535 SI (PR), 2003 WL 926617, at *2 (N.D.

10 Cal. March 6, 2003) (dismissing a § 1983 action and finding plaintiff's allegations that the

11 defendants' psychological assessments of him in connection with civil commitment proceedings

12 were wrong did not state a cognizable due process claim since plaintiff had the opportunity to

13 contest the accuracy of defendant's testimony at the civil commitment hearing).

14        G.  Fifth Amendment Claim

15          Finally, plaintiff's second amended complaint suggests that he may be claiming

16 that his constitutional right against self-incrimination was violated by Dr. Miccio-Fonseca's

17 failure to advise him of his right to counsel at the interviews or in some other fashion.  As noted

18 above, because civil commitment proceedings are civil in nature, the Fifth Amendment right

19 against self-incrimination does not apply.  Allen v. Illinois, 478 U.S. at 369-70; see also  People

20 v. Leonard, 78 Cal. App. 4th 776, 789-93 (2000).  Therefore, any such claim presented in a third

21 amended complaint would likely be the subject of dismissal.

22 VI.  Conclusion

23          For the reasons set forth above, defendant's motion will be granted and plaintiff's

24 second amended complaint will be dismissed.  However, out of an abundance of caution,

25 plaintiff will be granted leave to amend and provided a final opportunity to allege a cognizable

26 claim for prospective injunctive relief as to this defendant.

1    Plaintiff is reminded that the court cannot refer to prior pleadings in order to make

2  his third amended complaint complete.  Local Rule 15-220 requires that an amended complaint

3  be complete in itself without reference to any prior pleading.  This is because, as a general rule,

4  an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57

5  (9th Cir. 1967).  Once plaintiff files a third amended complaint, the prior pleadings no longer

6  serve any function in the case.  Therefore, in a third amended complaint, as in an original

7  complaint, each claim and the involvement of the defendant must be sufficiently alleged.

8    In accordance with the above, IT IS HEREBY ORDERED that:

9    1.  Defendant's February 9, 2007 motion to dismiss is granted;

10    2.  Plaintiff is granted thirty days from the service of this order in which to file a

11  third amended complaint that complies with the terms of this order, the requirements of the Civil

12  Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the third

13  amended complaint must bear the docket number assigned to this case and must be labeled

14  "Third Amended Complaint"; the third amended complaint must be complete in itself without

15  reference to any prior pleading; and failure to file a third amended complaint in accordance with

16  this order will result in a recommendation that this action be dismissed; and

17    3.  In the event a third amended complaint is filed, defendant need not file a

18  response until ordered to do so by the court.

19  DATED: September 26, 2007.

20

21    Dale A. Drozd

22    DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

23  DAD:4
    huft1522.mtd2a.2

24

25

26