1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL HUFTILE,

11          Plaintiff,                No. CIV S-03-1522 FCD DAD P

12      vs.

13   L.C. MICCIO-FONSECA,

14          Defendant.               <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16          Plaintiff is a civil detainee under California's Sexually Violent Predator Act

17   (SVPA).  He is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Before

18   the court is defendant Dr. Miccio-Fonseca's motion to dismiss brought pursuant to Rule 12(b)(6)

19   of the Federal Rules of Civil Procedure.[1]  This is defendant's third motion to dismiss this action.

20   Plaintiff has filed his opposition to the pending motion.

21   _____

22          [1] In her notice of motion, defendant Miccio-Fonseca indicates that she is moving to
     dismiss pursuant to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil
23   Procedure.  However, she does not argue that the court lacks subject matter jurisdiction.  A
     motion brought pursuant to Rule 12(b)(1) seeks dismissal on the grounds of lack of subject
24   matter jurisdiction and is predicated either on a facial challenge that the allegations in a
     complaint are insufficient to invoke federal jurisdiction or a subfacial challenge disputing the
25   truth of the allegations that would otherwise invoke federal jurisdiction.  <u>Safe Air for Everyone v.</u>
     <u>Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, defendant advances neither argument.
26   Therefore, the court construes the motion as one brought pursuant to Rule 12(b)(6) for failure to
     state a claim upon which relief can be granted.

**BACKGROUND**

I. Case History[2]

      This action has a lengthy and complex history in part because it is one of four cases that plaintiff has filed in this court relating to his 2002 civil commitment.[3]  The first of those four was a civil rights action brought against Dr. Val Farmer alleging that the doctor had violated plaintiff's constitutional rights by testifying at his 2002 civil commitment proceeding. See Huftile v. Farmer, CIV S-03-0585 DFL PAN P.[4]  The district court dismissed plaintiff's claims for damages and declaratory relief in that case pursuant to the holding in Heck v. Humphrey, 512 U.S. 477 (1994), granted defendant Farmer's motion for summary judgment on plaintiff's claims for injunctive relief and denied plaintiff's motion for preliminary injunction. Huftile v. Farmer, CIV S-03-0585 DFL PAN P, Order filed Mar. 17, 2006 at 2.

      Next, plaintiff filed a civil rights action against Dr. Jack Vognsen[5] alleging that Dr. Vognsen's improper actions resulted in plaintiff being found a sexually violent predator and seeking prospective injunctive relief prohibiting the doctor from taking such actions in the future. Huftile v. Vognsen, CIV S-03-0604 RRB JFM P.  On June 22, 2007, the assigned magistrate

---

    [2] For the sake of completeness, the undersigned will once again set out the history of this litigation which, for the most part, was addressed in this court's September 27, 2007 order.  (See Doc. No. 53 at 1-4.)

    [3] A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

    [4] Defendant Farmer had provided counseling services to plaintiff in 1983, conducted a psychological evaluation and testified as a defense witness at plaintiff's 1984 child molestation/rape trial in South Dakota.  See Huftile v. Farmer, CIV S-03-0585 DFL PAN P, Findings and Recommendations (F&R) filed Feb 10, 2006 at 2.  In plaintiff's 2002 civil commitment proceeding, Dr. Farmer's 1984 report was submitted into evidence by the district attorney without objection and Dr. Farmer was called to testify by the state.  Id. at 3.

    [5] Both Dr. Vognsen and the doctor named as a defendant in this action, Dr. Miccio-Fonseca, served as evaluators of plaintiff in connection with the 2002 civil commitment proceeding and both were called to testify in connection with those proceedings by the state.

judge in that action filed findings and recommendations recommending that defendant Vognsen's motion to dismiss be granted.[6]  Therein, the assigned magistrate judge concluded that plaintiff was not entitled to prospective injunctive relief against defendant Dr. Vognsen.[7]  Those findings and recommendations were adopted in full by the assigned district judge on November 6, 2007, and judgment was entered in favor of defendant Dr. Vognsen that same day.

In addition to his civil rights cases, on January 27, 2005, plaintiff filed a petition for a writ of habeas corpus challenging his 2002 civil commitment.  See Huftile vs. Hunter, CIV S-05-0174 GEB DAD P.  In that habeas petition plaintiff challenged the November 1, 2002, finding by the Sacramento County Superior Court that he was a sexually violent predator on the grounds that: (1) the evidence was insufficient to support the jury's finding; and (2) the trial court violated his right to due process when it excluded evidence that he was subject to an outstanding arrest warrant out of South Dakota for completion of a criminal sentence imposed against him in that state.  On January 16, 2009, the undersigned issued findings and recommendations recommending that the habeas petition be denied.  On February 17, 2009, those findings and recommendations were adopted by the assigned district judge and judgment was entered accordingly.  No appeal was taken.

The above-entitled action is now the final remaining case of the four (three civil rights, one habeas) cases filed by plaintiff in this court, with respect to his 2002 civil commitment proceeding.  Plaintiff filed his complaint in this action on July 17, 2003, pursuant to 42 U.S.C. § 1983 and therein challenged the manner in which defendant Dr. Miccio-Fonseca conducted her 2002 evaluation of plaintiff.  Specifically, plaintiff alleged that Dr. Miccio-Fonseca violated confidentiality rules and codes of professional ethics by reviewing plaintiff's

---

[6]  Plaintiff filed an interlocutory appeal to the Ninth Circuit in connection with that action.  The appeal was dismissed by the Ninth Circuit for lack of jurisdiction on October 3, 2007.

[7]  The prospective injunctive relief rejected in that case was similar to that which plaintiff seeks in this action against Dr. Miccio-Fonseca.

1  prison file, medical records, psychological evaluations, and police and court records without his

2  consent.  (See Huftile v. Miccio-Fonseca, CIV S-03-1522 FCD DAD P, Doc. No. 5 at 3.)

3  Plaintiff also alleged that Dr.  Miccio-Fonseca's report contained false and unsupported

4  statements, inaccurate test results, incomplete information and unsound conclusions.  (Id.)  In his

5  original complaint plaintiff sought damages as well as declaratory relief and made vague

6  reference to injunctive relief that would "prevent[] Defendant from inflicting further injury upon

7  Plaintiff." (Compl. at 27.)

8           On August 15, 2003, the undersigned recommended that the action be dismissed

9  as barred by the holding in Heck v. Humphrey.  Those findings and recommendations were

10  adopted by the assigned district judge on September 4, 2003.  Plaintiff appealed and, on June 10,

11  2005, the U.S. Court of Appeals for the Ninth Circuit affirmed the dismissal of plaintiff's claims

12  for damages and declaratory relief, finding that the rule announce in Heck did apply to

13  individuals detained under California's SVPA.  Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-

14  41 (9th Cir. 2005).  The court also concluded that "a judgment in favor of Huftile in his § 1983

15  action would necessarily imply the invalidity of his civil commitment."  410 F.3d at 1141.[8]  The

16  Ninth Circuit, however, reversed the dismissal of plaintiff's claim for injunctive relief which

17  sought an order preventing Dr. Miccio-Fonseca from inflicting further injury upon him.  Id. at

18  1141.  Specifically, the court stated in this latter regard:

19         While Huftile's claims for damages and declaratory relief are
       barred by Heck, Huftile's claim for injunctive relief is not barred.

20         We therefore reverse the portion of the district court's order
       finding a Heck bar to injunctive relief.  We do not decide whether

21         Huftile is, in fact, entitled to injunctive relief.  On remand, the
       district court will be free, through appropriate procedures, to

22         decide on the propriety of such relief.

23  Id.

24  ————————————

25     [8]  The Ninth Circuit did remand the matter so that dismissal of those claims could be
specified as without prejudice to plaintiff filing a § 1983 action seeking such relief in the event

26  his civil commitment was subsequently invalidated through some other means such as the
granting of habeas relief.  410 F.3d at 1142.

1    Following remand, on March 8, 2006, the undersigned filed findings and

2  recommendations recommending that plaintiff's claims for damages and declaratory relief be

3  dismissed without prejudice and that this action proceed solely on his claim for prospective

4  injunctive relief.  Those findings and recommendations were adopted by the assigned district

5  judge on April 19, 2006.  On July 24, 2006, defendant filed a motion to dismiss plaintiff's sole

6  remaining claim for injunctive relief.  Rather than opposing that motion, on July 31, 2006,

7  plaintiff filed an amended complaint, erroneously titled "Second Amended Complaint."[9]

8    In a lengthy narrative plaintiff's second amended complaint listed thirteen claims

9  and eight requests for injunctive relief.  His claims fell into the following four groups: (1)

10  challenges to the methodology, accuracy and sufficiency of Dr. Miccio-Fonseca's evaluation,

11  including her alleged misconstruing of facts relating to plaintiff's South Dakota conviction

12  involving his stepdaughter; (2) claims that both the Clinical Evaluator Handbook and

13  Standardized Assessment Protocol (SAP) manual used by Dr. Miccio-Fonseca in conducting

14  plaintiff's evaluation are "illegal"; (3) claims that Dr. Miccio-Fonseca violated plaintiff's

15  constitutional right to privacy, his contract rights and the doctor/patient and husband/wife

16  privileges by accessing his prison files, medical files and the records of Dr. Farmer without

17  plaintiff's consent; and (4) claims that Dr. Miccio-Fonseca violated plaintiff's rights by her

18  failure to tape record his interviews, produce a copy of the court order requiring plaintiff to be

19  interviewed and to provide proper notice to plaintiff before the interviews and advise him of his

20  right to have counsel present.  Based upon these alleged unconstitutional acts by Dr. Miccio-

21  Fonseca, plaintiff sought prospective injunctive relief in the form of an order: (1) barring Dr.

22  Miccio-Fonseca from "approaching Plaintiff in any official or unofficial manner" without the

23

24    [9] Although titled "Second Amended Complaint," this document was actually plaintiff's
   amended complaint.  The only previously filed complaint was the original complaint (Doc. No.
25  1) filed on July 17, 2003.  Nevertheless, in order to avoid any further confusion the court has
   used plaintiff's description and referred to the complaint filed July 31, 2006 (Doc. No. 27), as
26  plaintiff's second amended complaint.

presence of counsel; (2) prohibiting Dr. Miccio-Fonseca, state evaluators or other agents of the

State of California from using or referring to Dr. Miccio-Fonseca's evaluation of plaintiff; (3)

requiring that all records of Dr. Miccio-Fonseca's evaluation of plaintiff be destroyed; (4)

prohibiting Dr. Miccio-Fonseca, other evaluators and agents of California from using Dr. Val

Farmer's reports, evaluations or testimony; (5) prohibiting any contact with plaintiff's ex-wife

and requiring that all records of past conversations with plaintiff's ex-wife be destroyed; (6)

prohibiting Dr. Miccio-Fonseca, other evaluators and agents of California from using the Clinical

Evaluator Handbook and Standardized Assessment Protocol (SAP);  (7) prohibiting the use of his

South Dakota conviction, involving plaintiff's stepdaughter, as a predicate offense under the

SVPA; and (8) barring Dr. Miccio-Fonseca and other evaluators and agents of California from

falsely characterizing the nature of his South Dakota conviction.[10]

On February 9, 2007, defendant responded to plaintiff's second amended

complaint with another motion to dismiss, which plaintiff opposed.[11]  On September 27, 2007,

the court granted the motion to dismiss, noting that plaintiff had simply alleged many of the same

claims that the Ninth Circuit had already found to be Heck-barred because plaintiff's success on

those claims would necessarily imply the invalidity of his civil commitment and because he had

not alleged facts entitling him to prospective injunctive relief and was seeking said relief against

individuals who were not parties to this action.  (Doc. No. 53 at 13-18.)  Out of an abundance of

_____

[10]   By order filed December 8, 2006, the undersigned denied defendant's motion to dismiss without prejudice in light of plaintiff's right to amend his complaint prior to the filing of a responsive pleading.  Defendant was directed to file a response to the second amended complaint.

[11]   On August 14, 2006, plaintiff also filed a motion for preliminary injunction and on September 14, 2006, a motion to reinstate his claims for damages and declaratory relief. Plaintiff's motion for preliminary injunction was denied as defective and premature and the undersigned recommended that the motion to reinstate his claims for declaratory relief and damages be denied.  The findings and recommendations were adopted by the assigned District Judge on February 20, 2007.  On March 5, 2007, plaintiff filed a notice of appeal from the court's order denying his motion to reinstate his requests for declaratory relief and damages and, on July 27, 2007, that appeal was dismissed for lack of jurisdiction.

1   caution, the court granted plaintiff leave to file a third amended complaint in order to provide

2   him a final opportunity to allege a cognizable claim for prospective injunctive relief as to

3   defendant Dr. Miccio-Fonseca.[12]

4          On November 29, 2007, plaintiff filed his third amended complaint.  On

5   November 6, 2008, the court ordered defendant to file her response.  On December 22, 2008,

6   defendant filed the pending motion to dismiss.  On March 9, 2009, plaintiff filed his opposition.

7   II.  Plaintiff's Civil Commitment Proceedings

8          Defendant Dr. Miccio-Fonseca was one of two evaluators designated by the

9   California Department of Mental Health to assist in the determination of whether plaintiff fell

10  within California's SVPA, California Welfare & Institutions Code §§ 6600, et. seq.  On February

11  2, 2001, Dr. Miccio-Fonseca attempted to interview plaintiff but he refused to be interviewed.

12  (Third Am. Compl. at 4.)  Dr. Miccio-Fonseca submitted her evaluation report, dated March 26,

13  2001, based solely on a review of plaintiff's Central File.  (Id., at 4 & Ex. 2.)

14         On April 20, 2001, following a probable cause hearing on the petition for

15  plaintiff's civil commitment, the assigned Sacramento County Superior Court judge determined

16  that there was probable cause to believe that plaintiff was likely to engage in sexually violent

17  predatory criminal behavior after being released from prison.  (Id. at 4.)

18         On June 27, 2002, Dr. Miccio-Fonseca was directed to interview plaintiff for an

19  updated evaluation but plaintiff again refused to be interviewed.  (Third Am. Compl. at 4-5.)  Dr.

20  Miccio-Fonseca prepared an updated report based on a review of plaintiff's Central File and

21  using actuarial scales.  (Id., Ex. 5.)

22         On October 21, 2002, plaintiff's civil commitment trial commenced.  (Id. at 5-6.)

23  Dr. Miccio-Fonseca testified at the trial.  (Id. at 6.)  On November 1, 2002, the jury rendered a

24

25         [12]  In that order the court also advised plaintiff of the legal standards governing his request
    for a permanent injunction and any due process, equal protection, Fifth and Sixth Amendment
26  claims he might be seeking to pursue.

1  true verdict against plaintiff, finding beyond a reasonable doubt that he is a sexually violent

2  predator.  (Third Am. Compl. at 6.)

3          Plaintiff's initial civil commitment expired on November 1, 2004.  (Id. at 8.)  A

4  second petition for the period November 1, 2004 to November 1, 2006 was granted.  (Id.)  A

5  third petition for the period November 1, 2006 to November 1, 2008 has subsequently been

6  granted.  (Id.)

7                          **PLAINTIFF'S THIRD AMENDED COMPLAINT**

8          Plaintiff's third amended complaint differs somewhat from his prior complaints

9  filed in this action.  Plaintiff now alleges as follows.  Defendant Dr. Miccio-Fonseca violated his

10  due process rights in three respects.  First, Dr. Miccio-Fonseca relied on "inaccurate data

11  material" concerning plaintiff's 1984 conviction in South Dakota in preparing her evaluation.

12  (Id. at 12.)  Plaintiff contends that his South Dakota conviction was not a qualifying offense

13  under the SVPA because the victim was his adopted daughter and the offense did not result in an

14  "extra-familiar [sic] conviction[.]"  (Id. at 9.)  Second, Dr. Miccio-Fonseca failed to provide

15  plaintiff with proper advance notice of the February 2001 interview.  (Id. at 13.)  Plaintiff

16  contends that because he did not receive adequate notice, he did not have "ample time to procure

17  any and all pertinent material data pertaining to his 1984 South Dakota conviction" to show that

18  it involved an "incestuous familiar [sic] offense."  (Id.)  Plaintiff alleges that because of the lack

19  of notice he "was forced to . . . decline to interview[.]"  (Id.)  Third, Dr. Miccio-Fonseca failed to

20  follow the state court's order to audio tape his mental examination in violation of California

21  Code of Civil Procedure 2032.530(a).  (Id. at 14.)  Plaintiff contends that he declined to be

22  interviewed, in part, because the doctor failed to comply with this requirement.  (Id.)

23          In the prayer for relief set out in his third amended complaint, plaintiff requests

24  the following prospective injunctive relief:

25          A.  An order barring Defendant Miccio-Fonseca  from rendering a
            "legal conclusion" on whether Plaintiff's 1984 South Dakota
26          conviction is a predicate sexually violent offense;

B.  An order barring Defendant Miccio-Fonseca from approaching Plaintiff Huftile in any manner in the future;

C.  An order prohibiting Defendant Miccio-Fonseca from further utilizing her constitutionally defective evaluation of Plaintiff further against Plaintiff;

D.  An order expunging Defendant Miccio-Fonseca's prior evaluations (February 2001, and June 2002) from further proceedings under the SVP Act; and

E.  An order enjoining Defendant Miccio-Fonseca from acting in a similar manner in the future to the detriment of Plaintiff Huftile.

(Id. at 16.)

## PARTIES' ARGUMENTS

I.  Defendant's Motion to Dismiss

Counsel on behalf of defendant Dr. Miccio-Fonseca argues that plaintiff's request for injunctive relief is barred because it is still predicated on the notion that the doctor's mental health evaluation reports and her testimony were somehow constitutionally flawed.  (Motion to Dismiss (MTD) at 5.)  Counsel argues that regardless of the relief sought, under Heck v. Humphrey, 512 U.S. 477, 487 (1994), if plaintiff's success in this action would necessarily imply the invalidity of his civil commitment, plaintiff may not proceed on his claims unless that commitment has been invalidated.  (Id.)

Second, counsel argues that under the Younger abstention doctrine, this court should abstain from accepting jurisdiction over plaintiff's claims because his civil commitment proceedings are ongoing.  (Id. at 6.)  In this regard, counsel argues that Younger abstention applies where there is an ongoing state judicial proceeding.  (Id.)  Here, according to counsel, state court proceedings are ongoing in the sense that under the SVPA, there are annual reviews of plaintiff's mental condition and he is entitled to a hearing if the annual review shows his condition has so changed that he no longer meets the definition of a sexually violent predator or if conditional release is a less restrictive alternative.  (Id.)  In addition, defense counsel argues

/////

9

that plaintiff has an opportunity to raise any claims that his federal constitutional rights are being violated in those ongoing state review proceedings.

Third, counsel argues that plaintiff cannot obtain the permanent injunction he seeks against Dr. Miccio-Fonseca because he "cannot show actual success on the merits and the likelihood of irreparable harm." (Id. at 8) (quoting Clement v. California Dep't of Corrections, 220 F. Supp. 2d 1098, 1114-15 (N.D. Cal. 2002)).  Counsel notes that in his third amended complaint plaintiff claims that Dr. Miccio-Fonseca failed to tape record her interviews of him, attempted to interview plaintiff without giving him adequate prior notice which in turn deprived him of an opportunity to challenge the reliability of documents with respect to his qualifying offenses.  (Id.)  However, defense counsel contends that plaintiff cannot succeed on the merits of these claims because the SVPA required Dr. Miccio-Fonseca to take each of the challenged actions.  (Id.)  Counsel asserts that in assessing whether plaintiff has a diagnosable mental disorder or factors known to be associated with the risk of reoffense among sex offenders, Dr. Miccio-Fonseca properly reviewed his criminal and psychosexual history and previous mental health evaluations.  (Id.)  Counsel argues that while plaintiff may be dissatisfied with the conclusions reached by Dr. Miccio-Fonseca, plaintiff does not have a right to a particular mental health diagnosis.  (Id. at 9.)  Thus, counsel contends, plaintiff cannot succeed on his claims that Dr. Miccio-Fonseca violated his constitutional rights and this action should be dismissed.  (Id.)

Counsel also argues that plaintiff cannot succeed on the merits of his due process claims because he does not have a protected interest and, in any event, received all the process to which he was due.  (Id.)  Counsel notes that plaintiff received mental health evaluations, a probable cause hearing and a jury trial and that plaintiff himself does not contend that the procedural protections of the SVPA were denied to him.  (Id.)  In addition, counsel observes that the SVPA does not require that one subject to civil commitment proceedings be given prior notice of the mental health evaluations or that a tape recording of those evaluations be provided. (Id.)  Counsel argues that plaintiff's reference to the California Code of Civil Procedure as

requiring defendant's interview be audio-taped applies to civil discovery, not mental health

evaluations under the SVPA.  (Id.)  Moreover, defense counsel asserts that there is no law

establishing a right to direct what information the mental health evaluator will consider or what

procedures the evaluator will use to verify the accuracy of related documents.  (Id.)  Counsel

contends that plaintiff could have obtained an independent mental health examination to review

the same medical records and psychological reports that were available to Dr. Miccio-Fonseca.

(Id. at 10.)  In any event, counsel argues, the subsequent jury trial at which plaintiff was

represented by counsel provided an opportunity for plaintiff to challenge any inadequacy with

respect to the mental health evaluations.  (Id.)

        In conclusion, counsel for defendant Dr. Miccio-Fonseca asserts that in order to

be entitled to injunctive relief, plaintiff must demonstrate some irreparable harm.  Counsel argues

that plaintiff cannot show any such irreparable harm flowing from any alleged inaccuracies in the

information reviewed or biases reflected in the reports or testimony provided by Dr. Miccio-

Fonseca.  (Id.)  This is because plaintiff had a probable cause hearing and a trial at which time

both he and his counsel were provided access to the same information that was made available to

Dr. Miccio-Fonseca. (Id.)   Moreover, Dr. Miccio-Fonseca was subject to cross-examination.

(Id.)  Finally, plaintiff is entitled to yearly reviews of his mental condition as well as to the

appointment of an expert who would be provided access to all of the records in question.  (Id. at

11.)  Under these circumstances, defense counsel argues, plaintiff cannot obtain a permanent

injunction because he cannot show that he will be irreparably harmed by any alleged errors

committed by defendant Dr. Miccio-Fonseca.  (Id.)

II.  Plaintiff's Opposition

        Plaintiff opposes the motion to dismiss.  Plaintiff argues that Younger abstention

is inapplicable here because his request for expungement or redaction of defendant Dr. Miccio-

Fonseca's psychological evaluations is not the subject of any ongoing judicial proceeding in state

court.  (Opp'n at 4.)  Plaintiff argues that any ongoing SVPA proceedings involving him are

independent of his 2002 civil commitment proceeding.  (Id. at 5.)  Plaintiff seeks the

expungement or redaction of defendant Dr. Miccio-Fonseca's psychological evaluations from his

record because her inaccurate conclusion that his South Dakota conviction for raping his step-

daughter is a qualifying conviction will be relied upon in the future by other psychologists who

will evaluate plaintiff in connection with SVPA review proceedings.  (Id.)

Next, plaintiff argues that he does not challenge the "procedural process"

provided for by the SVPA, but rather, "the **conclusion drawn** by the defendant, which

substantially alters facts concerning the South Dakota conviction."  (Id. at 7) (emphasis in

original).  Plaintiff also contends that he does not challenge defendant Dr. Miccio-Fonseca's

evaluation due to her review of his prison and medical files, psychological and social history, or

her use of the Static-99 test.  (Id.)  Instead, plaintiff challenges "her conclusion concerning the

South Dakota conviction (as a predicate sexually violent offense under the SVP statute)" and

seeks to have that "invalid conclusion" redacted and expunged from the record.  (Id.)  In this

regard, plaintiff contends that he "is not claiming expungement/redaction of the Miccio-

Fonseca's psychological reports is a constitutional right, but rather, plaintiff seeks

expungement/redaction as an equitable remedy under 42 U.S.C. § 1983 for alleged violations of

his constitutional right to due process."  (Id. at 8.)

As to the his right to have his mental examination tape recorded, plaintiff argues

that California's Civil Discovery Act of 1986 establishes this right.  (Id.)  Relying on California

law, plaintiff contends that the Civil Discovery Act of 1986 applies to SVPA cases such as his.

(Id.)

Finally, plaintiff argues that he is seeking an injunction prohibiting defendant

from "ever again (1) utilizing Mr. Huftile's South Dakota conviction to his detriment, (2) to

expunge or redact her prior erroneous mental health conclusion concerning his South Dakota

conviction, and (3) enjoining defendant from any future mental health examinations of plaintiff

under the SVP Act."  (Id. at 10.)  He argues that such an injunction is necessary because other

evaluators will read defendant Dr. Miccio-Fonseca's reports in the future and will adopt the same

conclusion "since that conclusion has become final as to the plaintiff." (Id. at 9.)  Lastly,

plaintiff argues that expungement of defendant Dr. Miccio-Fonseca's erroneous conclusion that

his South Dakota conviction is a qualifying offense under the SVPA is an equitable remedy

available to him through this § 1983 action.  (Id. at 10.)

<h2 style="text-align:center">APPLICABLE LEGAL STANDARDS</h2>

I. Legal Standards Applicable to a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure tests the sufficiency of the complaint.  North Star Int'l v. Arizona Corp. Comm'n, 720

F.2d 578, 581 (9th Cir. 1983).  Dismissal of the complaint, or any claim within it, "can be based

on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

(1957)).  However, in order to survive dismissal for failure to state a claim a complaint must

contain more than "a formulaic recitation of the elements of a cause of action;" it must contain

factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic

Corp., 550 U.S. at 555.

In determining whether a pleading states a claim, the court accepts as true all

material allegations in the complaint and construes those allegations, as well as the reasonable

inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v.

King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S.

738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In the context of a

1   motion to dismiss, the court also resolves doubts in the plaintiff's favor.  Jenkins v. McKeithen,

2   395 U.S. 411, 421 (1969).  However, the court need not accept as true conclusory allegations,

3   unreasonable inferences, or unwarranted deductions of fact.  W. Mining Council v. Watt, 643

4   F.2d 618, 624 (9th Cir. 1981).

5          In general, pro se pleadings are held to a less stringent standard than those drafted

6   by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe

7   such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

8   However, the court's liberal interpretation of a pro se complaint may not supply essential

9   elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

10  266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).

11  II.  Legal Standards Applicable to Actions Seeking Injunctive Relief

12         The United States Supreme Court has identified the requirements for the granting

13  of  permanent injunctive relief. as follows:

14         According to well-established principles of equity, a plaintiff
            seeking a permanent injunction must satisfy a four-factor test
15         before a court may grant such relief.  A plaintiff must demonstrate:
            (1) that it has suffered an irreparable injury; (2) that remedies
16         available at law, such as monetary damages, are inadequate to
            compensate for that injury; (3) that, considering the balance of
17         hardships between the plaintiff and defendant, a remedy in equity
            is warranted; and (4) that the public interest would not be disserved
18         by a permanent injunction.

19  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  See also Weinberger v. Romero-

20  Barcelo, 456 U.S. 305, 312 (1982) (In exercising their sound discretion, courts should pay

21  particular regard to public consequences in granting an injunction.); American-Arab Anti-

22  Discrimination Committee v. Reno, 70 F.3d 1045, 1066-67 (9th Cir. 1995) ("The requirements

23  for the issuance of a permanent injunction are the likelihood of substantial and immediate

24  irreparable injury and the inadequacy of remedies at law.")  In addition, in seeking prospective

25  injunctive relief, plaintiff must allege facts that if proven would establish that he is likely to

26  /////

suffer future injury if defendant is not so enjoined.  See Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1042 (9th Cir. 1999).  Thus, as the Ninth Circuit has observed:

> In a suit for prospective injunctive relief, a plaintiff is required to demonstrate a real and immediate threat of future injury. City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L. Ed.2d 675 (1983) (holding that the threat must be "'real and immediate'" as opposed to "'conjectural' or 'hypothetical'"). The key issue is whether the plaintiff is "likely to suffer future injury." Id. at 105, 103 S. Ct. 1660; see also O'Shea v. Littleton, 414 U.S. 488, 496, 498, 94 S. Ct. 669, 38 L. Ed.2d 674 (1974).

Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006).

Of course, "the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative." Stevens v. Harper, 213 F.R.D. 358, 370 (E.D. Cal. 2002).  See also City of Los Angeles v. Lyons, 461 U.S. 95, 105-08 & n.7 (1983) (a plaintiff is required to credibly allege that he faces a realistic threat of future harm from the practice he seeks to enjoin); Goldie's Bookstore v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury.")

The standards for permanent injunction and preliminary injunction are essentially the same with the exception that in order for a permanent injunction to issue, plaintiff must ultimately show actual success on the merits, instead of probable success on the merits.  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987); see also Walsh v. City and County of Honolulu, 460 F. Supp. 2d 1207, 1211 (D. Hawaii 2006).[13]

/////

---

[13] "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S. Ct. 365, 374 (2008)).  Of course, in cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

III.   California's Sexually Violent Predators Act (SVPA)

The SVPA became effective on January 1, 1996 and reflected "'the Legislature's determination of the importance of identifying and controlling persons whose criminal history and mental state render them sexually violent predators.'"  Hubbs v. Alamo, 360 F. Supp. 2d 1073, 1076 (C.D. Cal. 2005) (quoting Albertson v. Superior Court, 25 Cal. 4th 796, 810 (Cal. 2001)).

The procedures set out under the SVPA have been summarized by the Ninth Circuit as follows:

> California's SVP Act requires that a prisoner who was previously convicted of certain enumerated violent sex crimes be evaluated by the Department of Corrections, the Board of Prison Terms, and the California Department of Mental Health six months before being released from prison to determine whether the prisoner may be a potential SVP.  See Cal. Welf. & Inst.Code § 6601(a)(1).  This screening involves review of the prisoner's background and criminal record. See id. § 6601(b).  If the Department of Corrections concludes that the prisoner is likely to be an SVP, the prisoner is referred to the Department of Mental Health for a "full evaluation" to determine whether the prisoner meets the other criteria in the SVP Act.  See id.
>
> This full evaluation must be conducted in accordance with a standardized assessment protocol by at least two practicing psychiatrists or psychologists designated by the Department of Mental Health.  See id. § 6601(c) & (d).  The two evaluators must agree that the prisoner has a mental disorder and is dangerous within the meaning of section 6600 for proceedings to go forward under the SVP Act. [fn. omitted.] See id. § 6601(d).  If the two evaluators agree that the prisoner should be civilly committed under the SVP Act, the Department of Mental Health will then transmit a request for a petition for commitment to the county in which the alleged SVP was convicted.  At that time the Department of Mental Health will also send the county copies of the psychiatric evaluations prepared by the evaluators and any other supporting documentation.  See id. § 6601(d), (h), & (i).
>
> "If the county's designated counsel [either the district attorney or county counsel] concurs with the recommendation, a petition for commitment shall be filed in the [county's] superior court...." Id. § 6601(i).  Once the petition for civil commitment is filed in the superior court by the county's designated counsel, a superior court judge will then hold a "probable cause hearing."  Id. § 6602(a).  At

16

this hearing, the prisoner is entitled to assistance of counsel. The superior court judge will determine at the hearing whether there is probable cause to believe that the prisoner is likely to engage in sexually violent, predatory criminal behavior after being released from prison. See id. If the judge determines there is no probable cause, the judge shall dismiss the petition for commitment. If, however, the judge determines that probable cause exists, the judge must order the prisoner to remain in custody pending a civil commitment trial to determine whether the prisoner is, by reason of a diagnosed mental disorder, a danger to the health and safety of others and likely to engage in acts of sexual violence upon release from prison.

Despite the fact that the commitment trial is civil in nature, the prisoner is nonetheless "entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports." Id. [Cal. Welf. & Inst. Code] § 6603. If the prisoner is indigent, then she or he is entitled to court-appointed counsel and court-appointed experts. If the prisoner or county's designated counsel do not demand a jury trial, a bench trial will be conducted. Id. § 6603(e). The court or jury shall determine whether, beyond a reasonable doubt, the prisoner is a sexually violent predator. Id. § 6604. A unanimous verdict is required in any jury trial. Id. § 6603(f). "If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced." Id. But if the court or jury determines following a trial that the person is a sexually violent predator, then the prisoner is deemed an SVP and civilly committed for two years in a facility designated by the California Department of Mental health. See id. § 6604. The SVP is then committed to the custody of the Department of Mental Health "for appropriate treatment and confinement in a secure facility . . . ." Id.

An SVP may not be civilly committed for more than two years unless a new petition for commitment is filed and a subsequent re-commitment is obtained pursuant to the same safeguards detailed above. See id. Once every year, the civilly committed SVP has a right to a "show cause" hearing to determine whether her or his condition has changed such that she or he no longer poses a danger to others. See id. § 6605. If the superior court at the show cause hearing determines that the SVP's condition has changed, then another hearing is held by the court to permit the State to show that the SVP remains a danger to others. Again, if the . . . [SVP] or county's designated counsel do not demand a jury trial, a bench trial will be conducted to determine whether the SVP remains a danger to others. If the court or jury finds in favor of the civilly committed SVP, then the person must be released. If, however, the

1     court or jury finds in favor of the State, the person is recommitted
      for two more years.  See id. §§ 6605, 6608.
2

3   Carty v. Nelson, 426 F.3d 1064, 1066-68 (9th Cir. 2005).

4           At the time of plaintiff's 2002 SVPA proceedings, a sexually violent predator

5   was defined as follows:

6           a person who has been convicted of a sexually violent offense
            against two or more victims and who has a diagnosed mental
7           disorder that makes the person a danger to the health and safety of
            others in that it is likely that he or she will engage in sexually
8           violent criminal behavior.

9   Cal. Wel. & Inst. Code § 6600(a)(1).

10          "Sexually violent offense" means the following acts when
            committed by force, violence, duress, menace, or fear of immediate
11          and unlawful bodily injury on the victim or another person, and
            that are committed on, before, or after the effective date of this
12          article and result in a conviction or a finding of not guilty by reason
            of insanity [for enumerated California Penal Code sections] . . .
13

14  Id. at § 6600(b).  The sexually violent offense could be a prior or current conviction that resulted

15  in a determinate prison sentence, a prior conviction that resulted in the grant of probation, or a

16  prior conviction in another jurisdiction.  Id. at § 6600(a)(2).  "No restriction is placed on the time

17  at which a prior qualifying crime must have occurred."  Hubbs, 360 F. Supp. 2d at 1077.

18                                        **ANALYSIS**

19          As noted above, plaintiff claims that Dr. Miccio-Fonseca violated his right to due

20  process by: (1) relying on his 1984 South Dakota conviction for raping his step-daughter in

21  preparing her evaluation; (2) failing to provide plaintiff with advance notice of his February 2001

22  interview; and (3) failing to record plaintiff's mental examination.

23          First, defendant correctly argues that the SVPA does not require that the evaluator

24  provide written notice before conducting the evaluation.  As one district court has stated in

25  rejecting a nearly identical claim:

26  /////

                                           18

SVPA does not provide for notification prior to screening and evaluation.  Nor is it clearly established that the Due Process Clause requires such notification.  The screening and evaluation process does not appear to amount to the sort of dispositive hearing for which a prisoner needs advance notice to marshal the facts and prepare a defense.  Cf. Wolff v. McDonnell, 418 U.S. 539, 564, 94 S. Ct. 2963, 41 L. Ed.2d 935 (1974) (prisoner facing disciplinary hearing must be given advance notice of disciplinary charges against him in order to enable him to marshal the facts and prepare a defense).  That generally will come at the probable cause hearing and jury trial, if a petition for commitment is filed.  Not surprisingly, there is no Supreme Court precedent requiring that an individual must be given notification prior to being screened and evaluated under the circumstances of this case.

Woodward v. Mayberg, 242 F. Supp. 2d 695, 704-05 (N.D. Cal. 2003).  See also Huftile v. Vognesen, No. Civ. S-03-0604 RRB JFM P, 2007 WL 1813711, at *6 (June 22, 2007) ("However, the SVPA does not provide for advance notice prior to interview by the mental health professional.")  Because plaintiff cannot succeed on the merits of this due process claim, he has not stated a cognizable claim for injunctive relief in that regard.

Likewise, there is no authority for the proposition that plaintiff has a federal constitutional right to have his SVPA interviews or evaluations recorded.  See Pritchett v. Hunter, No. C 05-0764 PJH (PR), 2008 WL 4183932, at *13 (N.D. Cal. Sept. 9, 2008) (concluding that the petitioner's contention that he was civilly committed in violation of state laws and procedures based on lack of notice and failure to provide him with a tape recording of his psychological interview failed to support a due process claim).  Again, because plaintiff cannot prevail on his claim that his due process rights were violated in this regard, he has not stated a cognizable claim for prospective injunctive relief.

Finally, plaintiff has not stated a cognizable due process claim with respect to Dr. Miccio-Fonseca's consideration of his 1984 South Dakota conviction, for raping his step-daughter, in her evaluation.  See Huftile v. Hunter, Civ. S-05-0174 GEB DAD, 2009 WL 111721, (E.D. Cal. Jan. 16, 2009) (discussing in the context of plaintiff's habeas challenge to his civil commitment, the role his 1984 South Dakota offense played in his civil commitment).  As

1   petitioner himself has alleged, any challenge to the accuracy of documents relating to that prior

2   conviction was addressed at his civil commitment trial.  (Third Am. Compl. at 6.)   Such a

3   challenge may be mounted again should plaintiff have objection to the matters considered in any

4   subsequent SVPA review proceedings.  Plaintiff is not entitled, under the U.S. Constitution, to

5   one particular psychological or psychiatric diagnosis.  Plaintiff's disagreement with Dr. Miccio-

6   Fonseca's evaluation or the matters she considered in reaching her conclusions was more

7   properly raised during the probable cause hearing, in his subsequent civil commitment jury trial,

8   on appeal in state court and in his federal habeas action.[14]  Because plaintiff has not prevailed and

9   cannot now prevail on this due process claim, he cannot be entitled to the requested injunctive

10  relief.

11          In addition, the undersigned finds that plaintiff has alleged no facts establishing

12  that he will suffer irreparable harm if the requested prospective injunctive relief is not granted.

13  As noted above, in his third amended complaint plaintiff seeks prospective injunctive relief that

14  would bar Dr. Miccio-Fonseca from reaching the same conclusions she reached in her 2001-02

15  evaluations of plaintiff, expunging those allegedly flawed evaluations from his record and

16  prohibit the doctor from "approaching Plaintiff Huftile in any manner in the future."  (Third Am.

17  Compl. at 16.)   Whether or not Dr. Miccio-Fonseca poses a future threat to plaintiff in this

18  regard is purely speculative.   Plaintiff has not alleged that Dr. Miccio-Fonseca played a role in

19  his SVPA proceedings subsequent to 2002.  In fact, it is clear that she did not.  Huftile, 410 F.3d

20  at 1142 ("Dr. Miccio-Fonseca did not conduct any of the evaluations underlying the state's

21  recommitment petition.").  The allegations in plaintiff's third amended complaint pertain only to

22  Dr. Miccio-Fonseca's 2001 and 2002 evaluations leading up to the 2002 civil commitment trial.

23  It is now clear that plaintiff continues to focus on alleged defects in those 2001 and 2002 reports

24  ───────────────

25          [14]  In fact, plaintiff has taken advantage of these opportunities, arguing in each of those
    proceedings, in one form or another, that his South Dakota conviction for raping his step-
    daughter was not a sexually violent offense that could serve as the predicate for a civil

26  commitment under the SVPA.

1   and their consideration of his 1984 conviction for raping his step-daughter and that he is in fact

2   seeking to undo what has been done rather than attempt to stop it from happening again in the

3   future.  As noted above, this case is limited to prospective injunctive relief only.  Accordingly,

4   plaintiff has failed to allege facts demonstrating any threat of irreparable injury specifically from

5   Dr. Miccio-Fonseca in the future.

6           For the reasons set forth above, this action for prospective injunctive relief should

7   therefore be dismissed.  Although not necessary to the disposition of the pending motion, the

8   undersigned notes that as clarified by the allegations of the third amended complaint this action

9   may fall within that category of cases still barred by Heck even though plaintiff seeks only

10  prospective injunctive relief.  See Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (holding that

11  "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought

12  (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to

13  conviction or internal prison proceedings) - *if* success in that action would necessarily

14  demonstrate the invalidity of confinement or its duration.")

15          As noted, plaintiff asserts that he is not challenging Dr. Miccio-Fonseca's

16  "ultimate conclusion . . . [as to] whether Plaintiff had (past) a diagnosable mental disorder, and is

17  therefore likely to engage in acts of sexual violence" but rather is challenging the lack of

18  procedural due process evidenced by defendant's impartiality and failure to establish the

19  reliability of documents before using the South Dakota offense in her evaluation.   (Third Am.

20  Compl. at 8.)  The distinction drawn by plaintiff, however, does not withstand scrutiny.  As the

21  Ninth Circuit has already explained in this case,

22          [T]he structure of the SVPA statutory scheme indicates that the
            success of Huftile's § 1983 claim would necessarily imply the
23          invalidity of his civil commitment.  Before the California Director
            of Mental Health can forward a request for an SVPA commitment
24          petition to the appropriate county, two evaluators must agree that
            the person has a diagnosed mental disorder so that he or she is
25          likely to engage in acts of sexual violence without appropriate
            treatment and custody. Cal. Welf. & Inst. Code § 6601(d).  An
26          attorney for that county may then file a petition for commitment.

1        Id. § 6601(i).  A judge must then review this petition to determine
whether there is probable cause to believe that the person is likely
2   to engage in sexually violent predatory criminal behavior upon
release.  Id. § 6602(a).  Because Dr. Miccio-Fonseca was one of
3   Huftile's evaluators, a judgment in favor of Huftile in his § 1983
action would necessarily imply the invalidity of his civil
4   commitment.  That is, if only one evaluator, rather than two, had
concluded that Huftile had a mental disorder within the meaning of
5   § 6601(d), there would have been no basis for the state Director of
Mental Health to send the request to the county,  no basis for the
6   county attorney to file a petition for commitment, and no basis for
the judge to go forward with a probable cause determination.

7

8   Huftile v. Miccio-Fonseca, 410 F.3d at 1140-41.  See also Hubbs, 360 F. Supp. 2d at 1080

9   (plaintiff's allegations that the defendant psychologist had included false statements and

10  misrepresentations in the evaluation report were barred because they implicated the validity of

11  plaintiff's SVPA civil commitment); Kitchens v. Houge, No. Civ S-04-1206 MCE PAN P, 2006

12  WL 2223881, at *3 (E.D. Cal. Aug. 2, 2006) (concluding that success on plaintiff's claims that

13  the two evaluators had violated his right to due process by relying on documents in his CDC

14  Central File would implicate the validity of plaintiff's civil commitment term).

15       The undersigned recognizes that the Ninth Circuit previously reversed this court's

16  dismissal of plaintiff's claim for injunctive relief as Heck-barred, noting that "[o]rdinarily, a

17  prayer for . . . prospective relief will not 'necessarily imply' the invalidity of a previous loss of

18  good-time credits, and so may properly be brought under § 1983."  Huftile, 410 F.3d at 1141

19  (quoting Edwards v. Balisok, 520 U.S. 641, 648 (1997)).  However, when the appellate court did

20  so it was faced with a claim which vaguely sought injunctive relief only to prevent "Defendant

21  from inflicting further injury" on plaintiff.  Id.  Now, in his third amended complaint, plaintiff

22  has made clear that he actually seeks the expungement of Dr. Miccio-Fonseca's 2001 and 2002

23  evaluations from his record.  As the Ninth Circuit has recognized, those evaluations were

24  essential to plaintiff's civil commitment and were they to be expunged, the validity of that

25  commitment would clearly be implicated.  410 F.3d at 1141.  Thus, this may well be a case

26  where plaintiff's specific claim for prospective injunctive relief is so intertwined with his

1   substantive claims that a favorable ruling on the former would imply the invalidity of his civil

2   commitment and would therefore be barred under Heck.  Nonetheless, the court need not resolve

3   this issue.  In his third amended complaint plaintiff has failed to state any cognizable claim that

4   his due process rights were violated by defendant.  Accordingly, his complaint should be

5   dismissed.[15]

6                                            **CONCLUSION**

7           In accordance with the above, IT IS HEREBY RECOMMENDED that:

8           1.  Defendant's Rule 12(b)(6) motion to dismiss plaintiff's third amended

9   complaint  (Doc. No. 59), filed on December 22, 2008, be granted; and

10          2.  This action be closed.

11          These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within five days after service of the objections.  The parties are advised

17  /////

18  /////

19  /////

20

21          [15]  The undersigned does not find defendant's Younger abstention argument to be
    persuasive.  Defendant does not assert that there is a pending state court proceeding but instead
22  merely contends that plaintiff is subject to annual review of his mental condition and a hearing if
    his mental health evaluation shows his condition has improved.  Younger abstention, however,
23  applies when (1) state proceedings, judicial in nature, are pending, (2) state proceedings involve
    important state interests; and (3) the state proceedings afford adequate opportunity to raise the
24  constitutional issue.  See Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S.
    423, 432-34 (1982).  Were defendant's rationale to be adopted, plaintiff could never file an
25  action in federal court as long as he was civilly committed because state review proceedings
    would always be, in a sense, ongoing.  Here, the abstention doctrine does not apply because there
26  is no pending civil commitment proceeding involving plaintiff.

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 17, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
huft1522.mtd3

24